UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- LONDON

KEVIN DANN,

       Plaintiff,

V.

DAVIS, et al.,

       Defendants.

Civil Action No. 6: 14-181-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kevin Dann is incarcerated at the United States Penitentiary - McCreary in Pine Knot, Kentucky.  On August 15, 2014, Dann filed a *pro se* civil rights complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) challenging the sufficiency of medical care provided by the Bureau of Prisons ("BOP") for an injury to the bones in his left wrist.  [R. 1]  Following service of process, defendants Dr. Jude Onuoha and Lt. Christopher Davis moved to dismiss the complaint, or in the alternative, for summary judgment.  [R. 19]  Dann has filed his response to that motion [R. 23] to which the defendants have replied.  [R. 25]  This matter is therefore ripe for decision.

**I**

On October 21, 2010, the United States District Court for the Northern District of Iowa sentenced Dann to a 120-month term of incarceration for being in possession of a firearm after having been convicted of a felony and of misdemeanor domestic violence in violation of 18 U.S.C. § 922(g).  *United States v. Dann*, No. 3: 10-CR-3017 (N.D. Iowa 2010).

Dann entered BOP custody on October 28, 2010, and was housed in an in-transit facility until his designation and transfer to the United States Penitentiary in Hazelton,

West Virginia, on February 11, 2011. [R. 19-1 at 3; R. 19-2 at 7] Dann indicates that while at USP-Hazelton, a x-ray of his left wrist showed that it was fractured. Dann later told a contract orthopedist that he had suffered the injury in 2007 when he was working with a nail gun. [R. 1-1 at 15] Following the examination, Dann was advised that he needed a bone graft to treat the injury. However, when he was being transported to the hospital for the procedure, he was told that his medical records had been lost, and the procedure was not performed. [R. 1 at 2] In April 2011, Dann filed an inmate grievance regarding the medical care for his wrist, knees, and an apparent infection in his lungs. Responses from the BOP's Mid-Atlantic Regional Office ("MARO") in June 2011 and from the Central Office in February 2012 indicated that Dann had been given prescription medications to address the localized pain he had been experiencing, and that he was approved to have magnetic resonance imagery ("MRI") performed and for a consultation with an outside orthopedist. [R. 19-2 at 14-17]

Dann was transferred out of USP-Hazelton on September 13, 2011, and arrived at USP-McCreary on October 6, 2011. [R. 19-2 at 7] Dann alleges that he was again transported to a hospital for a medical procedure on his wrist, but was told that his medical records had been lost and no treatment was received. [R. 1 at 2] Dann further alleges that BOP staff later refused to provide any treatment at all for his broken wrist, and that the pain medications he is receiving are insufficient to address the chronic pain he suffers. [R. 1 at 3]

The BOP has provided extensive records of the medical care provided to Dann. During an appointment at the Chronic Care Clinic shortly after his arrival at USP-McCreary, Dann stated that he had been approved for an orthopedic consult while at USP-Hazelton. [R. 19-3 at 13-17] Accordingly, on March 28, 2012, Dann was taken to the Premier Orthopedic Sports and Medicine clinic in London, Kentucky, and was examined by

2

Dr. Patrice Beliveau.  Because Dann was experiencing pain and stiffness in his left wrist, Dr. Beliveau requested that Dann's previous MRI from the orthopedist in West Virginia be obtained and/or that a new CT scan and MRI be performed so that they could be reviewed and a treatment plan formulated.  [R. 19-3 at 19-22]

Six months later, at a chronic care appointment on October 18, 2012, medical staff adjusted the pain medicine prescribed to Dann.  Because health care staff had attempted to get copies of the previous MRI taken in West Virginia but were unsuccessful, a formal request for a new MRI was made at this time.  On December 21, 2012, staff provided Dann with a brace for his left wrist.  [R. 19-3 at 37, 42-44]

On March 6, 2013, Dann was transported to the Baptist Regional Medical Center Outpatient Diagnostic Center in Corbin, Kentucky, and a new MRI was taken of his left wrist.  The MRI showed that:

> There is a nonunited fracture line extending through the scaphoid waist with minimal surrounding fluid and edema.  This may represent nonunion of fracture.  Additionally, there is persistent edema and some degree of probable sclerosis of the proximal scaphoid fragment as often seen with avascular necrosis.

[R. 19-3 at 51-52]  In layman's terms, Dann appeared to have an unhealed broken bone in his left wrist, persistent swelling of the surrounding tissue, and signs that a portion of the broken bone had died and hardened over time due to a lack of blood supply.  Following a March 12, 2013, appointment staff made a formal request for Dann to be evaluated by an orthopedic surgeon.  [R. 19-3 at 53-56]

Dann was evaluated by a nurse practitioner at the Chronic Care Clinic on September 5, 2013.  In light of Dann's complaints of pain in his left wrist, Dr. Onuoha approved the renewal of his prescriptions for pain medication, the administration of an injection of toradol for pain management, and providing Dann with a new wrist brace.  [R. 19-3 at 57-68]  This was Dr. Onuoha's first clinical interaction with Dann.  [R. 19-3 at 5]

Four days later, on September 9, 2013, Dann was transported to be evaluated by orthopedic surgeon Dr. Yasser Nadim.  After Dr. Nadim examined Dann and reviewed the MRI films, he recommended that Dann "will need to see a hand surgeon for probable fixation with bone graft of the scaphoid bone."  [R. 19-3 at 69-70]  Dr. Onuoha made a formal request for consultation with a hand surgeon on October 2, 2013, which was approved by the Utilization Review Committee two weeks later on October 16, 2013.  [R. 19-3 at 73-74]  On November 22, 2013, Dr. Onuoha revised the prescription medications used to address Dann's wrist pain.  [R. 19-3 at 75-78]

On October 30, 2013, Dann filed an inmate grievance complaining to the warden that medical staff were not dealing with his medical issues notwithstanding repeated referrals to outside orthopedic surgeons.  The warden's response indicated that Dann had been issued a wrist brace for use until the surgical consult approved two weeks prior could be performed.  [R. 19-2 at 20-21]  Dann appealed further, up to and including his January 2, 2014, appeal to the Central Office.  [R. 19-2 at 22-24]  The BOP acknowledges that the Central Office never responded to Dann's appeal, let alone within the forty days permitted, and as a result the appeal may be considered denied pursuant to 28 C.F.R. § 542.18.  [R. 19-1 at 11-12]

Lt. Davis met Dann for the first time on February 24, 2014, during an examination at the Chronic Care Clinic.  [R. 19-3 at 79-82; R. 19-5 at 2]  At Dann's request, Lt. Davis provided him with a new wrist brace.  Lt. Davis saw Dann again on April 7, 2014, during an appointment to discuss Dann's vitamin D levels as well as the risks of long-term use of non-steroidal anti-inflammatory drugs to address pain.  [R. 19-4 at 16-19]

On April 22, 2014, Dann was transported to the Premier Orthopedic Sports and Medicine clinic where he was seen by Dr. Jean-Maurice Page, an orthopedist who specializes in hand surgery.  Following examination, Dr. Page concluded that "no surgical

4

intervention is recommended," but that Dann should "[c]ontinue with medication as prescribed from the Prison to include Tylenol as needed for discomfort" and should continue using the wrist brace. [R. 19-4 at 21-22]

Lt. Davis evaluated Dann again on July 21, 2014, when he complained of continued wrist pain. When Dann complained that the medical care he was being provided was insufficient, Davis noted that Dr. Page had concluded that surgery was not warranted. Dann then stated that indomethacin had provided him with good relief from his pain in the past, and Lt. Davis prescribed that medication for pain management. [R. 19-4 at 24-30]

Dann filed his complaint in this action on August 15, 2014, claiming that his medications were insufficient to address the pain he was experiencing in his left wrist and had caused his liver or stomach to swell, and that his wrist injury was causing additional physical and emotional stress. [R. 1 at 3]  In their motion for summary judgment, defendants Dr. Onuoha and Lt. Davis contend that Dann failed to properly exhaust his administrative remedies with respect to the claims he asserts against them [R. 19-1 at 12-16] and that his claims, which express his disagreement with his health care providers over his medical care, fail as a matter of law to establish deliberate indifference under the Eighth Amendment [R. 9-1 at 16-20].  Lt. Davis independently contends that any *Bivens* claim against him is barred by 42 U.S.C. § 233(a) because he is an officer of the Public Health Services.  [R. 19-1 at 21-23]

## II

The Court must treat the defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and declarations extrinsic to the pleadings in support of it. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010).  A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one

essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F. 2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005). If the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to

6

sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F. 2d 1439, 1444 (6th Cir. 1993).

A

As an initial matter, the defendants are correct that to the extent Dann's complaint can be interpreted to assert any civil rights claims arising out of the medical care he received while incarcerated at USP-Hazelton in West Virginia, such claims must be dismissed.  Dann did not name any of the individuals who provided him with medical care at USP-Hazelton as defendants in this action, and the Court would lack personal jurisdiction over them for their out-of-state conduct if he had.  *Cf. Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006); *Scinto v. Federal Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C. 2009).  In addition, Dann was transferred out of that facility in September 2011, and filed his complaint in this case in August 2014.  Because West Virginia's two-year statute of limitations, W. Va. Code § 55-2-12, applies to civil rights claims arising out of conduct occurring in that state, *Wilkins v. Montgomery*, 751 F. 3d 214, 223 (4th Cir. 2014); *Roberts v. Wood Cnty. Comm'n*, 782 F. Supp. 45, 46 (S.D. W.Va. 1992) ("In West Virginia, the statute of limitations for a § 1983 civil rights action is two years."), any such claims would be time barred.

B

First, Lt. Davis has established that Dann's constitutional claims against him under *Bivens* must be dismissed with prejudice because he is a commissioned officer of the United States Public Health Service ("PHS").  Lt. Davis has held that status at all times relevant to the allegations of the complaint.  [R. 19-5 at 1, 3]  Congress has enacted a statute which specifically provides that an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346,

7

2671-80 ("FTCA") is the only remedy available for claims against a PHS officer arising from the performance of his duties:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a). Construing this provision, the United States Supreme Court has recently held that "PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of [their] conduct" in the course of their employment. *Hui v. Casteneda*, 559 U.S. 799, 802 (2010). Following *Hui*, federal courts have consistently dismissed *Bivens* claims against PHS officers in light of the exclusivity of the remedy provided by the FTCA. *Cf. Barrett v. Marbury*, 402 F. App'x 143, 145 (7th Cir. 2010) (dismissing prisoner's *Bivens* claim against PHS officer arising out of dental care provided at prison); *Etkins v. Glenn*, 519 F. App'x 111, 112 n.2 (3d Cir. 2013) (affirming district court's denial of plaintiff's motion to amend complaint to assert *Bivens* claims against PHS officer); *Norris v. Growse*, No. 09-CV-339-KSF, 2011 WL 4424746, at *4-6 (E.D. Ky. Sept. 21, 2011). Because the FTCA is the sole remedy for damage allegedly suffered as a result of actions taken by Lt. Davis as a PHS officer, Dann's claim under *Bivens* must be dismissed.

## C

Second, even if this were not so, Dann's *Bivens* claims against both Lt. Davis and Dr. Onuoha must be dismissed because Dann failed to properly exhaust his administrative remedies with respect to his claims against them. Before a prisoner may file suit asserting a claim regarding conditions at the prison or matters affecting his custody, federal law

8

requires him to exhaust whatever administrative remedies are available through the prison system:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). This rule applies to both ongoing conditions and individual incidents. *Porter v. Nussle*, 534 U.S. 516, 528-30 (2002). Prisoners must also follow whatever procedural requirements are imposed by the prison's grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90, 93-95 (2006).

In this case, Dann filed two grievances regarding medical care for his left wrist. Dann filed the first in April 2011 while he was still incarcerated at USP-Hazelton in West Virginia. [R. 19-2 at 14-17] However, Dr. Onuoha and Lt. Davis worked at USP-McCreary in Kentucky at all relevant times [R. 19-3 at 1; R. 19-5 at 1], and therefore were not the health care providers who treated Dann at USP-Hazelton.

Dann filed his second inmate grievance on October 30, 2013, while he was housed at USP-McCreary. [R. 19-2 at 20-24] Dr. Onuoha and Lt. Davis first provided Dann with medical care on September 5, 2013, and February 24, 2014, respectively. [R. 19-3 at 5, 57-68; R. 19-3 at 79-82; R. 19-5 at 2] This grievance cannot exhaust any claim Dann might have against Lt. Davis, who only began providing medical care to Dann four months after he filed it. Further, this grievance can only properly exhaust claims against Dr. Onuoha between the date he first provided treatment for Dann on September 5, 2013, and the date Dann filed his grievance on October 30, 2013.

The difficulty for Dann is not that he did not name Dr. Onuoha or Lt. Davis in his inmate grievance – the law does not require him to do so. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). However, by definition an inmate's grievance can only complain of events

9

transpiring before he files it with the prison – he cannot complain of events that have yet to transpire:

> First, Baker argues that through his prior invocation of the grievance process in 2004, the BOP was put on "fair notice" of his claims, and therefore he was not required to exhaust his claims again for conduct occurring thereafter. Baker cites *Burton v. Jones*, 321 F. 3d 569, 575 (6th Cir. 2003) for this proposition, which set forth the Sixth Circuit's rule that a grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made." Contrary to Baker's suggestion, *Burton*'s holding relates to the sufficiency of the allegations made in a particular prison grievance to put prison officials on notice of the nature of prisoner's claim – it does not remotely support the notion that once prison officials are aware of that claim, the prisoner is thereafter excused from fully and properly exhausting a claim arising out of similar but distinct conduct as required by 42 U.S.C. § 1997e and *Woodford v. Ngo*, 548 U.S. 81, 86, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

*Baker v. Holder*, No. 0:06-CV-91-HRW, 2010 WL 1334924, at *4 (E.D. Ky. Mar. 30, 2010), *aff'd*, No. 10-5547 (6th Cir. Apr. 5, 2011).  The foregoing establishes that Dann did not and could not have exhausted his administrative remedies with respect to any of his claims against Lt. Davis.

With respect to Dann's claims against Dr. Onuoha, BOP regulations require an inmate to file a grievance with the warden within twenty days of the event or occurrence giving rise to the claim.  28 C.F.R. § 542.14(a).  Dann's October 30, 2013, grievance could therefore only be timely filed with respect to matters occurring on or after October 10, 2013. Dr. Onuoha had no medical or clinical interactions with Dann during this time period.  Dr. Onuoha only provided medical care to Dann on two occasions before Dann filed his grievance:  on September 5, 2013, Dr. Onuoha approved the renewal of Dann's pain medications and the provision of a new wrist brace, and on October 2, 2013, Dr. Onuoha formally requested that Dann be examined by an orthopedic hand surgeon.  [R. 19-3 at 57-68, 73-74]  Because Dann did not file any grievance regarding Dr. Onuoha's medical care within twenty days after these dates, he failed to timely and properly exhaust his

10

administrative remedies with respect to any claim against him.  *Woodford*, 548 U.S. at 93-95; *Huff v. Neal*, 555 F. App'x 289, 294 (5th Cir. 2014); *O'Brien v. Seay*, 263 F. App'x 5, 8 (11th Cir. 2008); *Davis v. United States*, 272 F. App'x 863, 865 (11th Cir. 2008); *Carrie v. Rios*, No. 08-CV-13-KKC, 2008 WL 320329, at *1 (E.D. Ky. Feb. 4, 2008).

### D

If the Court were to reach the merits of Dann's claim that Dr. Onuoha and Lt. Davis were deliberately indifferent to his serious medical needs, the Court would conclude that he has failed to present a triable issue on this claim.  The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs."  *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim.  *Jones v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010).  The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it.  *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994).

The medical records in this case leave little doubt that the unhealed broken bone in Dann's left wrist constitutes a medical condition "sufficiently serious" to implicate the

Eighth Amendment. *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005) ("the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it [need only] be more than *de minimis* for an Eighth Amendment claim to go forward."); *Lockett v. Suardini*, 526 F. 3d 866, 875 (6th Cir. 2008).

However, the BOP has provided significant documentation which sets forth the medical treatment provided to Dann for that condition, documentation which establishes a narrative of responsive and adaptive care for his medical condition, not indifference to it. Well over one hundred pages of medical records provided by the BOP set forth a lengthy and established history of medical treatment, provided both in-house and through numerous trips to contract care providers and orthopedic specialists, between October 2011 and July 2014. During this period, BOP health care providers gave Dann a number of prescription medications to manage the resulting pain, and the records demonstrate that listened to his responses as to which was most effective and switched prescriptions accordingly. [R. 19-3 at 37, 42-44, 57-68; R. 19-4 at 24-30]

It is true that Dann alleges that he was told while at USP-Hazelton that he needed a bone graft procedure to treat this injury [R. 1 at 2], and that in September 2013 Dr. Nadim, an orthopedic surgeon, stated that Dann "will need to see a hand surgeon for probable fixation with bone graft of the scaphoid bone." [R. 19-3 at 69-70] However, when the orthopedic hand surgeon, Dr. Page, examined Dann and reviewed his medical records in April 2014, he concluded unequivocally that "no surgical intervention is recommended" and that Dann should be treated by continuing to manage his pain and by using a wrist brace. [R. 19-4 at 21-22]

Here, Dann's claim is based, in essence, upon his own conclusion that one doctor's apparent recommendation for surgery was right while another doctor's conclusion that surgery would not be effective was wrong. But where a prisoner has received abundant

medical treatment but merely disagrees with the course of care determined by his treating physicians in the exercise of their medical judgment, his claim sounds in state tort law – it does not state a viable claim of deliberate indifference under the Eighth Amendment. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."); *Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996); *Rodriquez v. Lappin*, No. 08-347-GFVT, 2009 WL 2969510, at *5-6 (E.D. Ky. Sept. 11, 2009). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

In sum, Dann's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation." *Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (*citing Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). See also *Blankenship v. Birch*, 590 F. App'x 629, 632-34 (7th Cir. 2014) (holding that prisoner's disagreement with prison physician's recovery and treatment regimen following orthopedic surgery failed to establish deliberate indifference); *Phillips v. Tiona*, 508 F. App'x 737, 745-47 (10th Cir. 2013) (same); *Chapman v. Pace*, 353 F. App'x 955, 957 (5th Cir. 2009) (same). For each of these reasons, Dann's complaint must be dismissed.

Accordingly, **IT IS ORDERED** that:

1.     The motion of defendants Dr. Jude Onuoha and Lt. Christopher Davis to Dismiss the Complaint, or in the alternative, for Summary Judgment [R. 19] is **GRANTED**.

2.     The Complaint filed by plaintiff Kevin Dann [R. 1] is **DISMISSED WITH PREJUDICE**.

3.     The Court will enter a judgment contemporaneously with this Order.

4.     This matter is **STRICKEN** from the active docket of the Court.

Entered August 17, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY